MRS. S. J. HARVEY ET AL. v. B. F. CARROLL ET AL.

No. 280.

1. **Land Certificate—Parol Transfer—Minor.**—An unlocated land certificate is personal property, and under certain circumstances is the subject of a parol sale or gift. The fact that the transferrer is a minor does not render the transfer void, but only voidable, and subject to be set aside by him after he becomes of age. Testimony of the stepmother that her minor stepson " relinquished to me all his right to the Edward Patterson certificate, saying that he wanted me to have all his father had in Texas," is insufficient to establish either a sale or parol gift.

2. **Divorce—Evidence.**—It was sufficient to authorize the submission to the jury of the question as to whether the parties had been divorced, when it was shown that the husband and wife had separated in 1835 or 1836, the husband coming to Texas, and living separately until 1840, when he again married in Texas, and the wife married in Alabama, and in addition to which there was in evidence an act of the General Assembly of Alabama which recited the divorce and dissolved the marriage.

3. **Limitation — Suspension — Tacking Disabilities.**—Mrs. Harvey, one of appellants, was a minor up to November 26, 1867, when she married. *Held*, at the time of the marriage the statute of limitation was not suspended, and it began to run against her from that date. It was not till the adoption of the Con-

stitution of 1869 that the statute of limitation was suspended from the 28th day of January, 1861, to the 30th day of March, 1870. The object of the Constitution of 1869 was merely to prevent the suspended period from being taken into account in the computation of the time required by the statute to bar an action, and was not to restore a disability that had already been removed, or to allow the tacking of disabilities so as to furnish protection for an indefinite time to a party against whom the statute had once begun to run.

APPEAL from Navarro. Tried below before Hon. RUFUS HARDY.

*James B. Goff*, for appellants.—1. The words attributed by the witness Brooks to William F. Patterson amount to no more than an expression of his desire that she should have " all his father had in Texas " (but whether before or after his death is uncertain), and were not competent, especially when no consideration was shown to have passed, to show a transfer of the same, but were calculated to influence the jury to believe that the judge considered that they amounted to a transfer. If William F. Patterson was a minor, he could not have legally transferred his right to the certificate; and the testimony objected to was not competent to prove any issue before the jury, and therefore irrelevant. Harvey v. Carroll, 72 Texas, 63.

2. The questions as to whether Edward and Nancy Patterson were legally divorced, and whether Edward and Alethea were legally married, were questions of law for the court, and it was error to submit them to the jury. The statutes of limitation were suspended during the period between January 28, 1861. and December 3, 1869, and during that period no statute of limitation existed; and until it was again in force, no possessor was protected against the lawful owner by reason of such possession; and if Mrs. Harvey was married previous to the date when the statute of limitation became operative, it did not commence to run against her and she could not be barred by any possession commencing or continuing during the time when no statute of limitation was in force. Pasch. Dig., arts. 4617a, 4631; Peak v. Swindell, 68 Texas, 246.

*Simkins & Neblett*, for appellees.—1. There was sufficient testimony as to the divorce of Edward Patterson and Nancy Patterson to submit the issue to the jury.

2. There was no error in submitting the statute of limitations, because appellant could not tack her marriage disability to the suspended statute; and though she was married in 1867, while the statute was suspended, limitation began in 1870, when the statute went into effect. Harvey v. Carroll, 72 Texas, 63.

3. There was no error in rendering judgment in favor of appellees for the land claimed by them, notwithstanding there was no special prayer. French v. Olliver, 67 Texas, 400.

LIGHTFOOT, CHIEF JUSTICE. — About 1828 Edward Patterson was married to Nancy Jennings, a widow, who lived in Lawrence County, Alabama, and who had a son by her former marriage, A. J. Jennings. They had born to them a son, William F. Patterson, about 1829. About 1835 or 1836 Edward Patterson came to Texas, and there is testimony tending to show that they were divorced in Alabama in the spring of 1838. Edward Patterson was married in Texas to Alethea Brooks, in November, 1840, and died in October, 1841, leaving Alethea Patterson as his widow, and his son William F. Patterson. Nancy Patterson was married to John J. McClosky about 1840 or 1841, and died in 1853, leaving as her heirs plaintiffs, Sallie J., who afterwards married Harvey, and a son, A. J: Jennings.

There was a certificate for one league and labor of land issued February 1, 1838, to Edward Patterson, by reason of his immigration in 1835, under which the 1285 acres of land in controversy was located in 1853, and patent issued to Edward Patterson in 1855. William F. Patterson died in 1847.

Plaintiffs, S. J. Harvey and A. J. Jennings, claimed that their mother, Nancy Edwards, owned a community one-half interest in the land certificate, and that Edward Patterson owned the other half, and upon his death descent was cast upon his son William F. Patterson, who died in 1847, leaving his mother, the said Nancy, as his only heir, and that at her death in 1853 the whole descended to plaintiffs.

Defendants claim different tracts, as follows: B. F. Carroll, 42 and 27 acre tracts; H. C. Melton, 86 acres; Emily C. and Henry Ivey, 221½ acres; and that each have made valuable improvements. And their specific tracts are set out by metes and bounds, all claiming under titles emanating from Alethea Patterson, the second wife, who had after the death of Edward Patterson married A. M. Brooks, and who claimed the certificate as the surviving widow of Edward Patterson, and that William F. Patterson had relinquished all his interest to her. Said defendants also claim under the statute of limitations of three, five, and ten years, and disclaim as to any other part of the land sued for. Defendant John Barnett, on October 14, 1890, filed a disclaimer.

The cause was tried October 15, 1890, and the verdict of the jury was as follows: " We, the jury, find for the plaintiffs land sued for, except as follows: We find for B. F. Carroll 69 acres, for Mrs. Emily C. Ivey 291½ acres [meaning 221½ acres], and for H. C. Melton 86 acres, out of said Patterson survey, and as respectively described in the special answer of said defendants." Upon which the court rendered a judgment, that the plaintiffs " do have and recover said land [without describing it], but that they take nothing by this suit as to defendants" Carroll, Melton, and Ivey, who each recovers his lands specifically by metes and bounds, and all the defendants recover their costs against plaintiffs. Their mo-

tion for new trial was overruled, to which plaintiffs excepted and have appealed.

*Opinion.*—1. The first, second, and fifth assignments of error are as follows:

"First.    The court erred in admitting, over plaintiffs' objections, the testimony of Alethea Brooks, as recited in the bill of exceptions, viz., 'That son relinquished to me all his right to the Edward Patterson certificate, saying he wanted me to have all his father had in Texas;' because the same was irrelevant and incompetent, and did not tend to show a transfer of the Edward Patterson certificate; and because the evidence then before the jury showed that William F. Patterson; the person referred to, was a minor.

"Second.    The court erred in charging the jury as to William F. Patterson having parted with his interest in the Edward Patterson certificate, there being no legal evidence tending to show that he had parted with the same."

"Fifth.    The court erred in refusing to give plaintiffs' sixth special charge, that the language used by William F. Patterson, as quoted in the testimony of Alethea Brooks, did not amount to a transfer of his interest in the certificate."

All of the three above assignments relate to the claimed relinquishment of William F. Patterson to his stepmother, Alethea Patterson (afterwards Brooks), of his interest in the headright certificate of his father, Edward Patterson, deceased.    This testimony was objected to, as shown by the bill of exceptions, because it was irrelevant, did not show a transfer of William F. Patterson's interest in the certificate, and because the other evidence showed that he was a minor.

An unlocated land certificate is personal property, and may be, under certain circumstances, the subject of a parol sale or gift.    The testimony upon this subject is vague and indefinite, and does not give the date or consideration, or any other circumstances of a relinquishment.    It was shown that William F. Patterson was 19 or 20 years old when he died, in 1847.

The fact that a party who makes a relinquishment, in proper form, is a minor does not necessarily render it void; but it is only voidable, and subject to be set aside by him after he becomes of age.    In view of the fact that the effect of this testimony has been once passed upon by the Supreme Court, in the case of Harvey v. Carroll, 72 Texas, 65, upon a former appeal, unless there was other testimony supporting it on this trial, it might have been properly excluded.    It was weak, indefinite, and not sufficient, either on the theory of a sale or parol gift.    If there was a reliquishment in writing, it should have been introduced in evidence, or its absence accounted for.    If a parol sale or gift was relied

upon, the facts should have been definitely shown bringing it within the rule in such cases. The mere empty declaration, that he wanted his stepmother to have all his father had in Texas, was not sufficient. The court in its charge to the jury so limited the effect of this statement as to render it harmless, and we can not see that appellants were in any manner prejudiced thereby.

2. The seventh and ninth assignments will be considered together, and are as follows:

"Seventh. The court erred in submitting to the jury the question whether Edward and Nancy Patterson were divorced, and whether said Edward and one Alethea were lawfully married, and in charging in reference thereto, there being no evidence to support said charge, or warrant any charge on these matters."

"Ninth. The court erred in refusing to give plaintiffs' special charge number 5, to the effect that if Edward and Nancy Patterson were husband and wife previous to the date of the alleged marriage of said Edward and Alethea, said marriage was unlawful, and said Alethea acquired no right thereby to the Edward Patterson certificate."

After the great lapse of time, and under the circumstances of this case, there was certainly enough testimony to authorize the submission of the question to the jury, as to whether there was a divorce of Edward Patterson from his wife Nancy. The parties had separated about 1835 or 1836, and Edward Patterson came to Texas; and they lived separately until about 1840, when Edward married Alethea Brooks, in Texas, and near the same time Nancy married John J. McClosky, in Alabama. These facts alone have been considered sufficient to raise the presumption of a divorce. Harvey v. Carroll, 72 Texas, 63.

But in this trial there was additional testimony. An act of the General Assembly of Alabama was in evidence, which recited that a decree of divorce had been granted by the Circuit Court of Lawrence County, Alabama, exercising chancery jurisdiction, at the Spring Term, 1838, and this act dissolved and annulled the marriage, in accordance with the Constitution and laws of the State.

3. The eighth assignment of error is as follows:

"Eighth. The court erred in charging the jury to find for defendants under their plea of limitation, unless Mrs. Harvey was a married woman at the time defendants took possession of the land, and that her marriage after the taking possession would not prevent the running of the statute of limitations, there being no statute of limitations in force either at the date of the taking possession by defendants or of the marriage of Mrs. Harvey, according to the evidence; and in refusing to give plaintiffs' special charge number 1, to the converse of said proposition, and that on proof of the marriage of Mrs. Harvey in 1867 she is presumed to be still a married woman."

It appears from the evidence, that in 1857 B. F. Carroll, Sr., bought 160 acres of the land in controversy, placed his deed on record, and improved and occupied the land, and that it has ever since been occupied by him and his heirs and vendees. Mrs. Harvey was married to her co-plaintiff, H. T. Harvey, November 26, 1867. In 1864 the 225 acres tract was bought under deeds duly recorded, and it has been improved and ever since held by a portion of the defendants and their vendors.

As to the holders of the 160 acres first improved and occupied by B. F. Carroll, Sr., in 1857, the period of occupancy was continuous from that time until 1882, when the suit was brought, and the limitation is admitted.

The parties claiming the 225 acres tract bought in 1864, and those under whom they claim went into immediate possession and began their improvements, and have ever since claimed, used, and occupied it. This evidence is not disputed by appellants; but they claim that at the time of such purchase and occupancy, and also at the time of the marriage of Mrs. Harvey, on November 26, 1867, the statute of limitation was suspended in Texas, and hence the statute never began to run against her. This position is not tenable. The testimony of Mrs. Harvey shows that she was a minor up to the time of her marriage in 1867. At the time of such marriage the statute of limitation was not suspended, and it was not until the adoption of the Constitution of 1869 that the statute of limitation was suspended from the 28th day of January, 1861, to the 30th day of March, 1870; and while the courts have been liberal in extending this suspension, for all causes of action, over that period, they have never extended it so far as to allow one disability to be tacked to another. At the time of the possession and improvement of this 225 acres of land in 1864, Mrs. Harvey was a minor, and no limitation could run against her until her marriage in 1867, but it then began. In the case of Ragsdale v. Barnes, 68 Texas, 504, the minor feme sole had married in 1868. The lot was sold and the vendee went into possession in 1863. The court said: "It is clear that if there had been no suspension of the statute of limitation, it would have commenced to run against her upon her marriage in 1868, and she would have been barred long before the institution of this suit. But it is contended that because the Constitution of 1869 provided that the statute should be suspended from the 28th day of January, 1861, until the acceptance of that Constitution by Congress, therefore there was no law of limitation in force at the time of appellant's marriage, and hence that when the suspension ceased the disability of coverture also attached and protected her against the bar of the statute. But in this view we do not concur. In the first place, it is to be borne in mind that during the year 1868 the laws of limitation were in full force (section 6 of Ordinance 11 of 1866, Sayles' Constitution, 343); and that upon appellant's marriage the statute began to run against her. White v. Latimer, 12 Texas, 62. The object of the provision of the Con-

stitution of 1869 was merely to prevent the suspended period from being taken into account in the computation of the time required by the statute to bar an action, and was not to restore a disability that had already been removed." Pages 505, 506. The above opinion of Judge Gaines so clearly presents our views, that further elaboration seems unnecessary.

Section 6 of Ordinance 11, passed by the Constitutional Convention of 1866, was as follows: "That in all civil actions the time between the 2nd day of March, 1861, and the 2nd day of September, 1866, shall not be computed in the application of any statute of limitations." Sayles' Const., 343.

This does not embrace November 26, 1867, the date of Mrs. Harvey's marriage, and at that date the statute of limitation began to run against her. The subsequent Constitution giving relief in the computation of time was not intended to allow the tacking of disabilities so as to furnish protection for an indefinite time to a party against whom the statute had once began to run.

The 42 acres tract claimed by B. F. Carroll was timbered land, and has not been in his actual possession, and there was no limitation in his favor upon that tract. Said appellee has since the trial filed in court a remittitur or relinquishment of that tract.

4. The remaining assignments of error attack the judgment rendered by the court on the finding of the jury, and in overruling their motion for new trial, in substance as follows: (1) Because appellants claim that they fully proved title in themselves. (2) Because there was no limitation proved as to the 42 acres, or of the 225 acres tract, or to any of the land, except the 150 acres tract. (3) Because the judgment fails to adjudge to appellants all the land except the special tracts found against them by the jury. (4) Because all costs are adjudged against plaintiffs below, even against defendant John Barnett, who disclaimed after litigating a number of years.

It will not be necessary to go into the details of these assignments. A part of the judgment as rendered by the court upon the verdict of the jury is erroneous. The defendants below having each severally set out the lands claimed by them, and held and claimed separately, we must treat the matter as though these causes were being tried upon separate titles.

The plaintiffs below are entitled to judgment, under the verdict of the jury and the remittitur filed, for all the lands sued for by them, except the 27 acres claimed by B. F. Carroll in his answer, not remitted; the 221½ acres claimed by Emily C. Ivey in her answer, and the 86 acres claimed by H. C. Melton in his answer, together with all of his costs expended herein against B. F. Carroll up to the filing of the remittitur or relinquishment of said 42 acres tract; and the judgment below should be affirmed in favor of B. F. Carroll for said 27 acres tract, with his costs

from the time of filing such remittitur or relinquishment; and rendered in favor of appellants against James Barnett for all costs incurred as against him up to the time of filing his disclaimer; and judgment is here rendered accordingly.

The appellees Emily C. Ivey and her husband, Henry Ivey, and H. C. Melton are justly entitled to the lands decreed to them by the court below, and as to them we find no material error, and the judgment is affirmed.

*Reversed and rendered in part and affirmed in part.*

Delivered November 1, 1893.